[Civ. No. 38716. Second Dist., Div. One. Apr. 20, 1972.]

JAMES L. CLERMONT et al., Plaintiffs and Appellants, v.
SECURED INVESTMENT CORPORATION et al.,
Defendants and Respondents.

## COUNSEL

Joseph I. Anderson, Kenneth Rosenberg, Terry J. Hatter, Jr., Abby Soven, Cecily Nyomarkay and Paul Chernoff for Plaintiffs and Appellants.

Leonard Smith and Stanley Stern for Defendants and Respondents.

## OPINION

**CLARK, J.**—Plaintiffs James and Katherine Clermont, in their capacities both as individuals and as representatives of a class, appeal from an order of dismissal following the sustaining, without leave to amend, of demurrers to all eight counts of their complaint.

### FACTS

Plaintiffs' action was based on the theory that defendants Les-Rob, Incorporated (Les-Rob) and Secured Investment Corporation (SIC) had conspired to exact and had in fact exacted usurious interest from plaintiffs Clermont and other members of their class (comprised of persons who

during the four years preceding the filing of the complaint had obtained loans from Les-Rob through a particular mortgage broker and had paid "late charges" to SIC for tardy payment of one or more installments on their loans) in violation of section 10242, subdivision (c), of the Business and Professions Code or, in the alternative, that defendants had conspired to collect and had in fact wrongfully collected what constituted liquidated damage from the Clermonts and other members of their class under a liquidated damage provision which was void under sections 1670[1] and 1671[2] of the Civil Code.

Plaintiffs' complaint alleged that plaintiffs and members of their class had borrowed money from Les-Rob at the maximum allowable interest rate (10% per annum) under section 10242, subdivision (c), of the Business and Professions Code; that under the terms of the note which Les-Rob had required them to make they had promised to pay "to the nominee of the holder [of the note] a late charge for each installment more than five days in arrears in an amount equal to one per cent of the original amount of this note," subject to the maximum of $45 per late charge; that in each case, before any payment was made, the borrower was notified in writing that all payments were to be made directly to SIC, Les-Rob's nominee and agent; and finally, that they and each member of their class had in fact paid one or more late charge to SIC.

## CONTENTS

Plaintiffs contend that while there are cases holding that late charge clauses like those involved here do not impose interest and thus are not usurious, and while there are other cases holding that late charge clauses are not by nature liquidated damage provisions and thus are not within the prohibition of section 1670 of the Civil Code, such clauses must be either interest or liquidated damage provisions. That being so, they argue, such clauses are either illegal as usurious, or void as assessing liquidated damage. Plaintiffs also contend they have alleged facts showing they are proper representatives of their class, and that the trial judge erred in determining otherwise.

---

[1]Section 1670 of the Civil Code: "Every contract by which the amount of damage to be paid, or other compensation to be made, for a breach of an obligation, is determined in anticipation thereof, is to that extent void, except as expressly provided in the next section."

[2]Section 1671 of the Civil Code: "The parties to a contract may agree therein upon an amount which shall be presumed to be the amount of damage sustained by a breach thereof, when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage."

### DISCUSSION

One line of cases validates late charge clauses in the face of the argument that they are in effect liquidated damage provisions by characterizing the charges as "additional interest." (See *Walsh* v. *Glendale Fed. Sav. & Loan Assn.* (1969) 1 Cal.App.3d 578 [81 Cal.Rptr. 804] and *O'Connor* v. *Richmond Sav. & Loan Assn.* (1968) 262 Cal.App.2d 523 [68 Cal.Rptr. 882].) On the other hand, a second body of law upholds such clauses against the challenge that they are usurious by denying that late charges are interest at all and by calling them "penalties for nonperformance." (See *First American Title Ins. & Trust Co.* v. *Cook* (1970) 12 Cal.App.3d 592 [90 Cal.Rptr. 645] and *Lagorio* v. *Yerxa* (1929) 96 Cal.App. 111 [273 P. 856].) No case that we have found discusses both the liquidated damage and usury contentions. No case discussing one contention makes reference to any case resolving the other.

The two lines of cases are in conflict unless there exists a third category, apart from liquidated damage (or "penalty for nonperformance") and interest, within which the late charge can be made to fit.

Defendants attempt to characterize the late charge as a "service fee" which defrays the cost to the lender or its servicing agent of policing a delinquent account. Defendants maintain that the borrower's failure to make timely payment of an installment sets in motion an elaborate and expensive procedure whereby the various arts of persuasion are brought to bear upon the borrower and extensive accounting operations are performed, to the benefit both of the lender and, ultimately, of the borrower himself.

We are unable, however, to discern any difference between this "service fee" and liquidated damage. As defendants describe it, the late charge or service fee is intended to compensate the lender or its agent for the extra time and effort which it must expend as a result of the borrower's tardiness. But to contend this is to say that the charge constitutes damage for breach of the borrower's obligation of timely payment. Defendants do not deny that no attempt is made to assess the delinquent borrower the precise cost of his dereliction. Rather, a contractually established fee, based strictly upon the size of the loan, is charged for every instance of tardiness, regardless of the length of delay or the amount of effort expended by the lender or its agent. We fail to see how this fixed fee can be characterized as anything but an attempt to provide for liquidated damage. (See Civ. Code, § 1670.)

Our determination that the late charge clause constitutes a liquidated damage provision is in apparent conflict with that line of cases, referred to

above, which holds that the late charge is in fact interest and not damage. But those cases either antedated passage of the usury laws (*Thompson* v. *Gorner* (1894) 104 Cal. 168 [37 P. 900] and *Finger* v. *McCaughey* (1896) 114 Cal. 64 [45 P. 1004] or involved lenders exempt from those laws (*Walsh* v. *Glendale Fed. Sav. & Loan Assn., supra,* 1 Cal.App.3d 578 and *O'Connor* v. *Richmond Sav. & Loan Assn., supra,* 262 Cal.App.2d 523) and thus did not treat the precise issue with which we are confronted. Furthermore, in each of those cases, the provision under which the late charge was imposed expressly characterized the charge as interest.

While the late charge here involved must constitute either damage or interest, it may not, without offending logic, constitute both. Having determined that the clause at issue is a liquidated damage provision, we do not reach the question of the applicability of the usury laws.

Defendants maintain that if we determine that the late charge clause is in fact a liquidated damage provision, we should make our decision prospective in operation. But our holding herein involves none of the serious consequences to the parties and to others (see *Westbrook* v. *Mihaly* (1970) 2 Cal.3d 765 [87 Cal.Rptr. 839, 471 P.2d 847]) which would warrant our making an exception to the rule that a decision is retrospective as well as prospective in operation.

With reference to plaintiffs' argument that they have alleged sufficient facts to justify their representing the class of borrowers to which they belong, defendants concede that the class which plaintiffs seek to represent is an ascertainable one and that it thus satisfies the first of the two criteria for a class action stated in *Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695 [63 Cal.Rptr. 724, 433 P.2d 732]. But defendants deny that sufficient facts are alleged to show a well defined community of interest among the members of the class, citing *Chance* v. *Superior Court* (1962) 58 Cal.2d 275 [23 Cal.Rptr. 761, 373 P.2d 849] and *Weaver* v. *Pasadena Tournament of Roses* (1948) 32 Cal.2d 833 [198 P.2d 514]. But *Chance* favors plaintiffs and *Weaver* is distinguished in *Daar.* If the question of the adhesive character of each of the standard form deeds of trust signed by members of the class involved in *La Sala* v. *American Sav. & Loan Assn.* (1971) 5 Cal.3d 864 [97 Cal.Rptr. 849, 489 P.2d 1113] did not on this basis bar a class action, and if the necessity of proof by each member of the class in *Daar* of the amount paid for taxi scrip did not preclude a class action there, we cannot see how the need for proof of payment by each member of the class can bar a class action here.

While the issue is not here considered because of the manner in which

the case has reached us, and while we do not intimate any view of its merit, we think that the question of whether the liquidated damage provision comes within section 1671 of the Civil Code will be the most crucial issue on remand. The answer will depend both upon whether damages assessed under the late charge provision bear some reasonable relation to probable loss (*Farthing* v. *San Mateo Clinic* (1956) 143 Cal.App.2d 385 [299 P.2d 977]) and whether actual damage would have been impracticable or extremely difficult to establish in advance of default (*Greenbach Bros., Inc.* v. *Burns* (1966) 245 Cal.App.2d 767 [54 Cal.Rptr. 143]).

The order appealed from is reversed. The cause is remanded for further proceedings consistent with the views expressed in this opinion.

Wood, P. J., and Lillie, J., concurred.