ROBERT G. and NORITA C. WEST, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
West v. Commissioner
Docket No. 34762-86
United States Tax Court
T.C. Memo 1991-18; 1991 Tax Ct. Memo LEXIS 18; 61 T.C.M. (CCH) 1694; T.C.M. (RIA) 91018; January 17, 1991, Filed *18 Decision will be entered for the respondent. Petitioners purchased a home financed in part by a loan from the Bank of America. The loan was evidenced by a note secured by a deed of trust. The note provided for a delinquency charge in the event any installment due thereunder was not timely paid. In 1983, petitioners paid $ 997 for such delinquency charges and deducted such payments as interest. Held, petitioners failed to prove that the delinquency charges are deductible as interest. Robert G. West, pro se. Rebecca T. Hill, for the respondent. JACOBS, Judge. JACOBS
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined a deficiency of $ 494 in petitioners' 1983 Federal income tax. After concessions by petitioners, the sole issue remaining for decision is whether petitioners are entitled to an interest deduction under section 163(a)[1] for late payment charges on their home mortgage loan. *19 FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and accompanying exhibits are incorporated herein by this reference. Petitioners resided in Danville, California, at the time they filed their petition. In 1980, petitioners purchased a home in Redwood City, California, for $ 175,000. The purchase was financed, in part, with a $ 140,000, 30-year loan from the Bank of America (the bank). The loan was evidenced by a note and secured by a deed of trust. The note bore interest at the rate of 12.25 percent per year and provided for monthly installment payments of $ 1,467.47, each due on the first day of the month. The note further provided: Notwithstanding any other provision of this Note, if default be made in the payment when due of any part or installment of principal and interest, the undersigned agrees to pay a delinquency charge for each installment in default 15 days in an amount equal to 4% of each such installment.
(Prior to 1975, the bank imposed a 2-percent late payment charge. In 1975, the bank raised the late payment charge to 4 percent. The bank's internal records reflect that this increase was made *20 to recover more of the costs resulting from delinquent real estate loans.) Sometime in 1982 and continuing into 1983, petitioners ceased making the required monthly installment payments. They received a delinquency notification from the bank and were informed that a delinquency charge was being imposed. The bank accrued such charge on monthly billing statements sent to, and received by, petitioners. In 1983, petitioners paid $ 997 as delinquency charges, of which $ 469 related to 1982. Petitioners deducted the $ 997 as interest on their 1983 tax return; by way of a stipulation filed at trial they conceded that $ 469 of the $ 997 in late payment charges claimed on their 1983 return is not deductible because they are accrual basis taxpayers and such charges relate to 1982. Respondent disallowed the deduction on the grounds that the late payment charges were not interest. The amount of the late charge imposed by the bank is a percentage of the delinquent installment. It does not increase as the period of delinquency increases; it is not considered a "finance charge" for Federal Truth in Lending law purposes. In 1983, the bank's Standard Procedures Manual provided that late charges *21 of the nature incurred by petitioners were to "compensate [the bank] for expenses and lost earnings." In the first month that a loan is delinquent, the bank's costs of collection are negligible. As time passes, additional costs are incurred and increase disproportionately. Foreclosure proceedings are not considered until a borrower has been in default for three months. After such time, a computer printout is generated listing those borrowers in default for 90 days; one of the bank's managers reviews the printout to determine whether foreclosure proceedings should be brought against a specific borrower. OPINION Section 163(a) allows a deduction for interest paid or accrued within the taxable year on indebtedness; the term "interest" is not statutorily defined. The Supreme Court has defined interest for Federal income tax purposes as the "amount which one has contracted to pay for the use of borrowed money," Old Colony Railroad Co. v. Commissioner, 284 U.S. 552, 560, 76 L. Ed. 484, 52 S. Ct. 211 (1932), and as "compensation for the use or forbearance of money." Deputy v. duPont, 308 U.S. 488, 498, 84 L. Ed. 416, 60 S. Ct. 363 (1940).In a particular instance, what constitutes compensation for the use or forbearance of money is *22 a factual determination -- labels or terminology are not controlling. L-R Heat Treating Co. v. Commissioner, 28 T.C. 894, 897 (1957). Petitioners posit that the loan documents permit them to make either timely or delinquent payments, and that the interest rate payable on their loan varies depending upon their performance. In other words, according to petitioners, if they tender timely payments, the interest rate on their mortgage loan is 12.25 percent per annum; but if they make delinquent payments, the interest rate on their mortgage loan is greater. We disagree. The mortgage note contemplates petitioners' remittance of timely payments, with a charge in the event petitioners breach their agreement to make timely payments, which they did. There is no indication that the bank intended to increase the effective yield on its loans through the late charge. Cf. Wilkerson v. Commissioner, 70 T.C. 240, 254-256 (1978), revd. on other grounds 655 F.2d 980 (9th Cir. 1981).The formula for calculating the late charge provision bears little resemblance to standard interest computations. The amount of the late charge has no correlation with the passage of time and is unrelated *23 to the prevailing market rate for home mortgage interest. The amount of the payment was determined at the time the loan was made (as a percentage of the monthly payment), and it remained constant throughout the entire term of the loan. The late charge amount was the same whether the payment was one day late or two years late, or as here, seventeen months late. In our opinion, there are three purposes for the bank's delinquency charge: (1) to compensate the bank for estimated expenses it will sustain as a result of the borrower's breach of contract, (2) to penalize the borrower for making untimely payments, and (3) to compensate the bank for lost earnings or interest. Liquidated damages enable the bank to assess the borrower an agreed amount for estimated expenses the bank will incur if the borrower fails to make timely payments; the bank is not required to prove the actual amount of expenses sustained as a result of the delinquent payments. With respect to a charge for a late home mortgage payment, liquidated damages compensate the bank for: (1) its administrative expenses of collection, and (2) lost earnings or the cost of the money wrongfully withheld. Garrett v. Coast and *24 Southern Federal Savings & Loan Association, 9 Cal. 3d 731, 108 Cal. Rptr. 845, 850-851, 511 P.2d 1197 (1973). Another purpose for the deliquency charge is to discourage borrowers from making untimely payments; to this extent, it is a penalty. Although the status of an item as interest for Federal income tax purposes does not depend upon its classification for other purposes, penalty provisions in a note which come into play only in the event of a maker's default are not regarded as interest on the loan itself under California law. First American Title Insurance & Trust Co. v. Cook, 12 Cal. App. 3d 592, 90 Cal. Rptr. 645 (1970). Finally, the delinquency charge enables the bank to partially recoup income it otherwise could have earned from reinvesting a timely installment payment. But petitioners have not satisfied their burden of proving that the late payment charges in question sufficiently relate to this element. Rule 142(a). In Rev. Rul. 74-187, 1974-1 C.B. 48, the Internal Revenue Service held that a late payment charge assessed by a public utility is deductible as interest. The holding was premised on the absence of evidence that the charge was for a specific service performed *25 in connection with the customer's account. In an attempt to distinguish Rev. Rul. 74-187 from the instant case, respondent posits that: In the revenue ruling, the Internal Revenue Service ("I.R.S.") assumed that the late payment charge was for the use or forbearance of money since there was no evidence that the charge was for a specific service performed in connection with a customer's account. This assumption was probably influenced by the fact that a public utility is in a regulated industry in which rates for services must be approved. * * * . . . the use of the term "specific services" in the revenue ruling is meant to be interpreted broadly and to include services for which separate charges are imposed on an individual borrower to compensate for costs incurred with respect to certain types of transactions but not services which are part of the general overhead of the lender. * * * . . . it is the I.R.S.'s position that payments made to compensate the lender for special handling are not interest. * * * In the case at bar, the record supports the fact that the late-payment charges were made to compensate the bank for costs resulting from delinquent real estate *26 loans payments. * * * The late payments charged by Bank of America ("B of A") more or less covered the costs incurred by B of A in connection with the processing of late payments. In fact, the payments made by the petitioners would have been less than the costs incurred by B of A in handling petitioners' late payments. Under the facts of the case at bar, the I.R.S.'s determination that the late payments at issue in the case at bar were not interest is consistent with the I.R.S.'s position in the revenue ruling.
Although we cannot distinguish the situation involved herein from that involved in Rev. Rul. 74-187 as easily as respondent, we agree with respondent that the record herein reveals that the bank assessed the late charge, primarily, to recoup costs (telephone calls, letters, supervisory reviews, field visits, loan workouts, and note revisions) attendant to its attempt to collect the delinquent loan. Further, we are mindful that a revenue ruling merely represents the Commissioner's position with respect to a particular factual situation; we are not bound to follow its conclusion, for it does not constitute substantive authority in this Court. Stark v. Commissioner *27 , 86 T.C. 243, 250-251 (1986). Deductions are a matter of legislative grace; taxpayers must prove their entitlement thereto. New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440, 78 L. Ed. 1348, 54 S. Ct. 788 (1934);Rule 142(a). Here, petitioners failed to prove that they are entitled to an interest deduction under section 163(a) for the late payment charges on their home mortgage loan. Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954 as amended and in effect for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩